The People of the State of New York ex rel. The New-burgh Savings Bank, Respondent, *v.* George W. Peck, Assessor of the City of Newburgh, et al., Appellants.

Tax — Savings Banks — Exemption of Surplus. The surplus fund of a savings bank of this state is exempt from taxation, by force of the provision of the Tax Law (L. 1896, ch. 908) exempting " the deposits in any bank for savings which are due depositors," together with the abrogation of statutory provision for taxing savings bank franchises.

*People ex rel. Newburgh Savings Bank* v. *Peck*, 32 App. Div. 624, affirmed.

(Argued October 4, 1898; decided October 18, 1898.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 17, 1898, and from the judgment entered in accordance

therewith, affirming an order of the Special Term vacating, on certiorari, an assessment upon the surplus of the relator.

The relator is a savings bank, incorporated under chapter 252 of the Laws of 1852, and, by virtue of the provisions of the "Banking Law," (Chapter 689 of the Laws of 1892, section 132), is entitled to all the privileges and is subject to the liabilities created by the latter act. The assessor of the city of Newburgh, in this state, assessed it as the owner of personal property to the value of $1,176,849.01; which amount was, subsequently, reduced to the sum of $414,849.01. The assessment was based upon the report made by the relator to the superintendent of banks of its condition on January 1st, 1897; which showed, after deducting from the total resources of the relator the total sum credited to depositors with interest, an apparent surplus of the amount first assessed. The reduction of the first assessment by the board of review of the city was effected by allowing a deduction from the apparent surplus of the market value of the United States bonds held by the relator and of the value of its real estate. A writ of certiorari to review such assessment was granted to the relator and upon the hearing, on the return of the writ, the assessment was ordered to be vacated and stricken from the assessment roll, as being illegal. Upon appeal to the Appellate Division of the second judicial department, the order of the Special Term was affirmed and from the order of affirmance a further appeal was taken to this court.

*J. Newton Fiero* for appellants. The surplus of a bank for savings, over and above the amount actually due and payable to its depositors, on demand, is not, under the laws of this state, a debt due depositors, and should not be deducted from its taxable property. (L. 1857, ch. 456, § 4; 15 Bouv. L. Dict. 511, 571; *People ex rel.* v. *Davenport,* 91 N. Y. 574; *People ex rel.* v. *Bd. Suprs.,* 16 N. Y. 425; *People ex rel.* v. *Comrs.,* 76 N. Y. 64; *People ex rel.* v. *Coleman,* 135 N. Y. 231; *People ex rel.* v. *Barker,* 154 N. Y. 131.) If the surplus of the relator is exempt from taxation, by reason of being a debt

due depositors, and, therefore, within the equity of the statute exempting deposits in savings banks from taxation, it is nevertheless taxable as personal property, after deducting the amount of such surplus invested in United States securities, under chapter 861 of the Laws of 1867. (L. 1867, ch. 861, § 1; *Chard* v. *Holt*, 136 N. Y. 30; *Mayor, etc.,* v. *B. & S. A. R. R. Co.*, 97 N. Y. 275; *Walsh* v. *City of Buffalo*, 72 N. Y. S. R. 99; *Bank of Commerce* v. *Tennessee*, 161 U. S. 146; Davies System of Taxation, 90.)

*Charles F. Brown* for respondent. A savings bank has no personal property liable to taxation for the reason that its indebtedness to its depositors always equals the total value of its gross assets. (L. 1896, ch. 908, § 21, subd. 4; *People ex rel.* v. *Barker*, 141 N. Y. 196; *Fowler* v. *Bowery Sav. Bank*, 113 N. Y. 450; *People ex rel.* v. *Barker*, 154 N. Y. 122; Banking Law, L. 1892, ch. 689, §§ 105, 113, 123, 124, 133–135; Morse on Banks & Banking [3d ed.], §§ 3, 616; Paine's Banking Law, 67, 296; *People ex rel.* v. *Beers*, 67 How. Pr. 209; *People* v. *Ulster Co. Sav. Inst.*, 64 Hun, 434; *Suffolk Co. Bank* v. *Seaman*, 149 Mass. 1; *Lewis* v. *Lynn Inst. for Sav.*, 148 Mass. 235, 242; *Mercantile Bank* v. *New York*, 121 U. S. 138, 160; *Huntington* v. *Savings Bank*, 96 U. S. 388.) The assessment cannot be sustained under Laws of 1866, chapter 761, section 7, as amended by Laws of 1867, chapter 861, as those statutes have been repealed. (*Wheeler* v. *Roberts*, 7 Conn. 536; *Van Denburgh* v. *Vil. of Greenbush*, 66 N. Y. 1; *Ottman* v. *Hoffman*, 7 Misc. Rep. 714; *Matter of N. Y. Inst.*, 121 N. Y. 234; *Matter of W. S. A. & P. R. R. Co.*, 115 N. Y. 442.) The provisions of the Banking Law and of the Tax Law are absolutely inconsistent with the theory that a savings bank is liable to taxation. (Tax Law, L. 1896, ch. 900, §§ 2, 5. 23, 24, 27, 34, 36, 71; Banking Law, L. 1892, ch. 689, §§ 20, 126.)

Gray, J. The important question, which this appeal brings up for our consideration and which, if decided in

accordance with the view taken in the court below, will dispose of the whole case, is whether the surplus fund held by a savings bank in this state is liable to taxation, or not. The opinion of Mr. Justice Hirschberg, at Special Term, upon which the justices of the Appellate Division have, in the main, rested their affirmance of this order, very fully and satisfactorily covers the ground of discussion; but, because of the importance of the case, I think that our reasons for affirming the order should be stated. It is quite apparent that the question is of very considerable importance; inasmuch as the aggregate of the amounts of surplus funds held by the savings banks of this state is upwards of one hundred millions of dollars and their exemption from taxation, necessarily, affects, materially, the body of taxpayers. Its decision turns upon the construction to be given to the provisions of the statute under which exemption from liability is claimed. That construction is not to be influenced by considerations other than those which may tend to elucidate the purpose of the law and which bear upon its just interpretation. All property, by the "Tax Law" of this state, is made liable to taxation; except so far as it is expressly exempted by law. That is the general rule and, in order that any property shall be taken out of its operation, the legislative enactment depended upon for exemption must be in unmistakable terms. No person, or property, is impliedly exempt from taxation and it is the rule that where exemption is claimed the statute is to be strictly construed against the claimant.

With the rule in view, which is applicable to the construction of the statute in question, let us consider the provision for exemption. It was, originally, contained in section 4 of chapter 456 of the Laws of 1857, and is now embodied in subdivision 14 of section 4 of chapter 908 of the Laws of 1896, which is known as the "Tax Law." The exemption clause reads as follows: "The deposits in any bank for savings which are due depositors, the accumulations in any domestic life insurance corporation, held for the exclusive benefit of the insured, other than real estate and stocks, now

1898.] People ex rel. Newburgh Sav. Bank *v.* Peck. 55

N. Y. Rep.] Opinion of the Court, per Gray, J.

liable for taxation; and the accumulations of any incorporated co-operative loan association upon the shares of such association held by any person." Does this language warrant the view that the legislature, by the language, "the deposits in any bank for savings which are due depositors," intended the exemption to apply to only such amounts as were credited on the books of the bank to depositors and which were immediately demandable by them? Did it intend, thereby, that the surplus fund held by the bank should be the subject of local taxation? Referring to those provisions of the Banking Law, which govern savings banks, we will ascertain what is the status under the law of a savings bank and what are its obligations to its depositors. Section 105 of the Banking Law, (Chap. 689 of the Laws of 1892), authorizes the corporation to receive deposits of money, to invest the same and to declare dividends thereon, and to prosecute the business of a savings bank only as provided in the statute. By section 113, it is provided that the sums deposited, together with the dividends, or interest, credited thereto, shall be repaid to the depositors, after demand, under regulations to be prescribed by the board of trustees. Section 123 provides that the trustees shall regulate the rate of interest, or dividends, not to exceed five per centum upon the deposits, "in such manner that depositors shall receive as nearly as may be, all the profits of such corporation, after deducting necessary expenses and reserving such amounts as the trustees may deem expedient as a surplus fund for the security of the depositors, which, to the amount of fifteen per cent of its deposits, the trustees of any such corporation may gradually accumulate and hold, to meet any contingency or loss in its business from the depreciation of its securities or otherwise." It is further therein provided that, "the trustees of any such corporation whose surplus amounts to fifteen per cent of its deposits, at least once in three years, shall divide equitably the accumulation beyond such authorized surplus as an extra dividend to depositors, in excess of the regular dividends authorized." Further, by other provisions, in the event of the dissolution of the corporation,

56 People ex rel. Newburgh Sav. Bank *v.* Peck. [Oct.,

Opinion of the Court, per Gray, J. [Vol. 157.

(Secs. 133, 134, 135), the moneys not paid to depositors must be paid to the superintendent of banks, to be by him distributed, under direction of the Supreme Court. These provisions seem to make it clear that every interest in the properties held by a savings bank is vested in the depositors and that the bank can acquire no interest therein. I think that section 123 can only be regarded as declaratory of the ownership of all the funds by the depositors. They are to receive all the profits; except that expenses are to be deducted and that there may be accumulated a surplus for their security. Such a corporation has neither capital nor shareholders, and its only resources are the moneys of depositors and the income which may be received from investments. The bank, necessarily from the statutory provisions, must be deemed to hold what property it has for the benefit of depositors only. It manages the same through its trustees and officers, and under no circumstances, and in no event, does it, or do its trustees, acquire any interest therein.

The assessment in this case, necessarily, proceeded upon the theory that the surplus fund belonged to the bank itself and that what was due to its depositors was only the aggregate of the sums credited to them on their pass books. That is the position of the appellants and they endeavor to support it by the argument that, as the depositors' accounts can be closed at any time and as they can only demand that which stands to their credit on the books, it must, therefore, follow that as to the surplus fund the bank is not their debtor. This argument depends upon a narrow reading of the exemption clause and fails to take into consideration the legal status of the savings bank and of its depositors. The bank neither earns, nor holds, anything for itself, or for its trustees; but holds everything for the depositors. The fact that the surplus represents accumulations, and may not be immediately paid out, cannot affect the question of the ownership of the property. The word " deposits," used in the statute of exemption, means, by a just interpretation, the total amount received for which the bank is accountable and not merely the identical moneys received

from particular depositors. The surplus, which has accumu-
lated, is a part of a fund which represents the original deposits
and its creation is authorized in contemplation that it may be
needed to be used to repay the depositors the amounts put in
by them. (*Lewis* v. *Lynn Institution for Savings*, 148 Mass.
235; *Matter of Suffolk Savings Bank*, 149 *ib.* 1; *Hunting-
ton* v. *Savings Bank*, 96 U. S. 388.) These cases, to which
the learned counsel for the respondent refers us, clearly sustain
these propositions. It is difficult to see upon what theory the
appellants' contention could be sustained, that only the actual
deposits, which are returnable to depositors upon demand,
are exempt from taxation. The surplus does not belong to
the bank; for it holds it for the security of the depositors; to
whom it is due contingently upon the occurrence of circum-
stances requiring its payment to them. If it is an asset, it is,
at the same time, to be treated as a liability of the bank.
The clause in question evidently regards " deposits " in savings
banks in the same light as it does the accumulations of life
insurance companies, or of loan associations, and no greater
reason exists for taxing the reserves of savings institutions,
than those of the other institutions mentioned.

We are, in nowise, embarrassed by our previous decisions,
in the cases of the *New London Savings Bank* and the
*Groton Savings Bank* (135 N. Y. 231; 154 *ib.* 122). In the
*New London Savings Bank* case, where the assessment was
made upon shares of the capital stock of banks in New York
city, standing in the name of the bank, a Connecticut cor-
poration, the views of Judge Earl, who delivered the opinion
which is reported, would certainly support the view which is
contended for by the appellants. But only one other member
of the court concurred with him in his opinion; while the
remaining members of the court concurred in the result and
refused to express any opinion upon the question of the taxa-
tion of deposits. In the subsequent case of the *Groton
Savings Bank*, also a Connecticut corporation, where the
assessment was, also, upon that part of the surplus which was
invested in the shares of capital stock of New York city banks,

8

the prior case was referred to and it was observed of it that there was nothing there to show that the depositors had any interest whatever in the surplus; or that they could ever be entitled to it. Judge O'BRIEN, who delivered the opinion of the court in the latter case, considered the provisions of the Connecticut statute and observed that it was apparent therefrom that the profits of savings banks belong in equity to the depositors and are a part of the deposits, in the same sense that the stipulated interest is, or may be. He said that the surplus was within the equity of the statute exempting depositors of savings banks from taxation, and that " this surplus fund is a debt, or obligation, due to depositors, just as much as the accumulated interest stipulated to be paid to them. There is no more reason, under these circumstances, for taxing the surplus fund of a savings bank than the accumulations of a life insurance company held for the exclusive benefit of the assured." Neither of these cases may be regarded as concluding us upon this appeal; but the reasoning of the opinion in the latter case, by reason of the general likeness of the particular features of the Connecticut statute to ours, is quite applicable.

There is another view, which favors the conclusion I think we should reach in holding the surplus fund of a savings bank to be exempt from taxation. By chapter 761 of the Laws of 1866 (Sec. 7), the privileges and franchises of a savings bank were made liable to local taxation, " to an amount not exceeding the gross sum of their surplus earned." Chapter 861 of the Laws of 1867, amended the act of 1866, as to its 7th section, by allowing the deduction from the surplus of the amount invested in United States securities. Both of these statutes were repealed by chapter 371 of the Laws of 1875; but, in 1882, chapter 402 of the laws of that year repealed the act of 1875 and the act of 1866; but did not, in terms, repeal the act of 1867. The appellants contend that, as a result, the act of 1867 was revived. I do not think that such was the result; inasmuch as the repeal of the act of 1866, which created the liability to taxation, could hardly be said to have left the

amendatory act of 1867 in force as an independent enactment.
But, however that may be, the revision of the Banking Law,
in 1892, and of the Tax Law in 1896, superseded, as the entire
statute law upon the subject, all antecedent provisions affect-
ing savings banks, under the established rule of construction.
(*Matter of New York Institution*, 121 N. Y. 234.)  Article
III of the Banking Law relates exclusively to savings banks;
but contains nothing which indicates a revival of the statute
of 1867; while section 183 of the Tax Law expressly exempts
savings banks from the payment of a tax on their privileges and
franchises.   It seems to be a fair, if not a plain inference,
from the course of legislation referred to, that, while the legis-
lature at one time authorized the local taxing authorities to
reach the surplus held by savings banks, in subsequently with-
drawing that authorization, it must be regarded as adopting a
policy of non-taxation in the case of savings institutions.   The
purpose to allow local taxation, for the benefit of the com-
munity, is to be deemed abandoned.   It is to be presumed that
considerations of public policy have dictated the exemption
and that the legislative body has been actuated by the motive
of assuring the protection of depositors against the contingen-
cies of losses, or of depreciation in values.   The only apparent .
reason for questioning the policy of such exemption is in the
magnitude of the amount of property affected; but that is a
reason which must be left to the consideration of the legisla-
ture and which does not bear upon the construction of the
law.

I think the order appealed from should be affirmed, with
costs.

All concur (Martin, J., in result), except Parker, Ch. J.,
not voting.

Judgment and order affirmed.