ISAIAH BAKER, JR., *vs.* THE TOWN OF WEST HARTFORD.

First Judicial District, Hartford, March Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

General Statutes, §§ 1171, 1172, exempts from taxation a tract of land
planted with forest trees of not less than twelve hundred to the
acre, for a period of not more than twenty years during the con-
tinuance of such tract as a wood or timber lot. *Held* that such a
plantation did not cease to be entitled to the exemption merely
because about one third of the total number of trees were destroyed
during a winter by an unexpected invasion of rodents which could
not have been prevented by any practical means, nor because the
replanting of new trees in the following spring, by the nursery
company which had contracted to do the work, was necessarily
delayed for a year by war conditions.

It may be possible to separate a part of a tract of land originally planted
with trees and subject that portion to taxation, if the owner fails
to continue to use it for a tree plantation; but the mere fact that a
larger proportion of the trees upon that particular part were de-
stroyed, under the circumstances above detailed, than upon the
remainder of the tract, will not justify a finding that the owner had
failed to continue it as a tree plantation.

Argued March 4th—decided April 17th, 1920.

APPLICATION in the nature of an appeal from the
refusal of the board of relief of the defendant town to
erase from the plaintiff's tax list a certain item inserted
therein by the town assessors, brought to and tried by
the Superior Court in Hartford County, *Keeler, J.;*
facts found and judgment rendered for the plaintiff,
and appeal by the defendant. *No error.*

In 1912 the plaintiff, under the provisions of Chap-
ter 205 of the Public Acts of 1911 (General Statutes,
§§ 1171, 1172), established a tree plantation of 18.2
acres at the southwest corner of Asylum Avenue and
Steele Road in West Hartford. In 1918 the assessors
of the town placed three acres of this plantation, hav-

ing a frontage upon Steele Road of about 561 feet, and having a depth of about 250 feet, upon the plaintiff's tax list of October 1st, 1918, on the ground that the three acres had not been continued as a tree plantation within the meaning of the Act. The board of relief, upon the plaintiff's appeal, refused to erase this item from the plaintiff's tax list, and the plaintiff thereupon appealed to the Superior Court.

The finding shows that in the spring of 1916 the plaintiff caused certain dead trees to be replaced by living ones, leaving at that time, after the replanting in the spring of 1916, over 1,200 trees to the acre. During the winter of 1916 and 1917 there were no considerable number of losses among the trees. During the winter of 1917–18 there was an invasion of rodents which ate the bark from a considerable number of trees, particularly at the eastern end of the lot fronting on Steele Road, the three-acre tract, resulting in the death of these trees. There was no practical method by which this loss could have been prevented, neither was a destructive invasion of rodents a source of loss which should have been anticipated. The plaintiff had a contract with the manager of a nursery company for replanting where necessary by reason of losses among the trees. In the spring of 1918 the contractor was engaged the entire time in war work. It was impracticable on account of the World War conditions for the plaintiff to replace the lost trees by replanting in the spring of 1918. As a consequence of this failure to replant in the spring of 1918, on October 1st, 1918, the number of trees on the whole tract, so near as could be estimated, averaged about 800 to the acre, and they were quite unevenly distributed. On the three-acre tract the total number of trees was somewhat less to the acre than on the balance of the tract, owing to the fact that the destruction by the

rodents in the winter of 1917–18 was more marked on this tract than on the rest of the plantation. On October 1st, 1918, this three acres still had 1,080 living trees, or a little less than 400 trees to the acre, and this tract was in no way separated from the remainder of the tract; but the entire tract, including the three acres, is surrounded by a substantial wire fence and has been used solely for the purposes of a tree plantation since the original planting in 1912, and for no other purpose. The plaintiff has done nothing indicating any intention to use it for any other purpose in the future. Taken as a whole, the good with the bad, the plantation has been continued as a wood or timber lot and as a tree plantation, within the meaning of the statute.

The court further finds that, standing by itself, the three-acre tract attempted to be taxed by the town would not constitute a continued plantation as contemplated by the statute, and that if this tract were all the property that had been planted, the appeal ought to be dismissed.

There are two grounds of appeal, stated as follows: (1) The court erred and mistook the law in ruling that upon the facts set forth in the finding the appeal should not be dismissed. (2) The court erred and mistook the law in holding that the part of the original entire plantation which had ceased to be continued as a tree plantation as contemplated by the statute should not be considered apart from the whole, and that it should not be taxed. There is also an appeal by the plaintiff from the finding that, standing by themselves, the three acres attempted to be taxed by the town would not constitute a continued plantation as contemplated by the statute, and that the court erred in refusing to strike out paragraphs 23 and 24 referring to the three-acre tract, as standing by itself,

as inconsistent with the finding of the subordinate facts.

*Joseph P. Tuttle* and *Reinhart L. Gideon,* for the appellant (defendant).

*Ralph O. Wells,* for the appellee (plaintiff).

GAGER, J. The facts relating to the assessment of the tree plantation in question, under the provisions of Chapter 205 of the Public Acts of 1911, and its continuance as a tree plantation to October 1st, 1913, are fully set out in *Baker* v. *West Hartford,* 89 Conn. 394, 94 Atl. 283. In that case we held the Act constitutional; that to secure the exemption from taxation provided by the Act the owner must fairly comply with the conditions prescribed by the Act; and that these conditions had been complied with up to October 1st, 1913, and that upon the latter date the plantation was exempt from taxation. It appears that by successive replantings the number of trees had been kept up so that after the replanting in the spring of 1916 there were more than 1,200 trees to the acre upon the entire tract. The Act required an original planting of not less than 1,200 trees to the acre, but says nothing as to a minimum number that must be maintained after the original planting. The finding is that there were no considerable losses during the winter of 1916–17, and we come to the beginning of the winter of 1917–18 with a well-stocked tree plantation. During this winter there was a destructive invasion of rodents which destroyed many trees scattered over the entire tract, the destroyed trees being especially numerous upon the three acres in question. This invasion was unpreventable and was not to be anticipated. As a result, in the spring of 1918 there were left approxi-

mately 800 trees to the acre, not evenly distributed over the whole tract, and upon the three-acre tract something less than 400 trees per acre. Although the owner had a contract for replanting, it is found that by reason of war work the contractor could not replant in the spring of 1918, and the court finds that on account of World War conditions it was impracticable to replant in 1918. Upon October 1st, 1918, then, the tree plantation is found in a damaged condition caused by an unpreventable invasion of rodents, and such condition could not, prior to that date, have been remedied by the owner. From such a condition so produced, no inference of fact can reasonably be drawn that the owner had, upon October 1st, 1918, within the meaning of the statute, failed to continue the tract as a tree plantation. Absolutely nothing is shown except the destructive invasion and the unavoidable failure to replant before the next taxing date. A reasonable opportunity must be given in such case, and the owner never had it. Suppose the rodent invasion had happened September 25th, 1918, with the same results; no one could, with a straight face, say, that on the following October 1st, from this fact alone, it could justly be found that the owner had then failed to continue the plantation; and yet that in effect is what the town claims here. Under the conditions as to replanting found here, a total destruction of the trees would not alone have justified a finding on October 1st, 1918, that the condition of the exemption had not been complied with. The actual condition of the trees at a given time, here October 1st, 1918, is not alone conclusive. How it came about, and whether the owner has had a reasonable opportunity to remedy it must also be considered. We are not called upon to say how greatly the number of trees must be reduced, and for how long this con-

dition must be continued without replanting, to justify a finding that the condition of exemption has not been complied with. The court has, not unreasonably, found that enough trees were in fact left to furnish second grade timber and cord wood; for that reason alone, apart from the loss of replanting in the spring of 1918, the conclusion of the court has sufficient support. The two reasons together make a conclusive case for the plaintiff.

The town, however, insists that the three-acre tract should be taken by itself. The court found that, standing by itself, this would not constitute a continued plantation as contemplated by the statute, and that if this tract could be taken by itself the appeal should be dismissed. This part of the finding is a legal conclusion not warranted by the subordinate facts found and set out at length. We think, in this case, the court was justified in insisting upon treating the tract as a whole. The owner had done nothing, either actively or passively, to separate the three acres from the rest. It is found that the entire tract was enclosed by a wire fence, that it had been used solely for a tree plantation, and that the owner had done nothing indicating any intention to use it for any other purpose in the future. The rodents did greater damage on this portion than on the rest, but that of itself cannot be charged to the owner as making it a separate tract.

We do not wish to be understood as saying that a part cannot be taken from a larger tract and subjected to taxation for failure to continue the use as a tree plantation, but upon the facts of this case there has been no such separation. Moreover, should we take the finding as to these three acres as though that were all the land affected, the finding does not show a failure to continue it as a tree plantation. There are

still nearly 400 trees to the acre. The replacement between the time of destruction and the taxing date was an impossibility, and, as indicated above, such a situation furnishes no reasonable ground for a finding that the owner had on October 1st, 1918, failed to continue the plantation. To so hold would be clearly unjust. Whichever way the three acres is taken, under conditions as they existed October 1st, 1918, whether by itself or as part of the eighteen acres, the judgment sustaining the plaintiff's appeal and erasing this tract from the plaintiff's tax list was right.

There is no error.

In this opinion the other judges concurred.