ADELARD A. DUCHARME *v.* CITY OF PUTNAM ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued March 5—decided April 20, 1971

*Frank E. Dully,* for the appellants (defendants).

*Robert F. Taylor,* for the appellee (plaintiff).

HOUSE, J. The controlling issue on this appeal is a narrow one and the facts are not disputed. The plaintiff was a regular member of the paid police department of the city of Putnam and as a condition for that employment had in 1963 successfully passed a physical examination which failed to reveal any evidence of any condition or impairment of health caused by hypertension or heart disease. In August, 1969, while in the course of his employment as a police officer, the plaintiff sustained an anterior myocardial infarction because of a coronary occlusion and as a result has been totally incapacitated. At a hearing to determine the workmen's compensation benefits to which the plaintiff was entitled the only issue raised was whether the 1969 injury arose out of the plaintiff's employment. The defendants offered to produce evidence which would tend to show that the plaintiff's occlusion and infarction did not arise out of his employment but were unrelated thereto and due to systemic health conditions. The commissioner denied the offer of proof and, without evidence, but relying upon the conclusive presumption provided in General Statutes § 7-433a,[1] found that the plaintiff's injury arose out of his employment and made an award on that basis.

---

[1] "Sec. 7-433a. DISABILITY OR DEATH OF POLICEMEN OR FIREMEN CAUSED BY HYPERTENSION OR HEART DISEASE. Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance, for the purpose of the adjudication of claims

It is the claim of the defendants that § 7-433a is unconstitutional because it provides an exclusive public emolument or privilege and results in a denial of equal protection of the laws and because the conclusive presumption contained in that statute results in a denial to the defendants of equal protection of the laws and deprives them of property without due process of law.

A preliminary question raised by the plaintiff is whether the defendant municipality has standing to attack the constitutionality of the statute. Earlier decisions of this court and of the United States Supreme Court would seem to indicate that the municipality lacks such standing. In *Williams* v. *Mayor,* 289 U.S. 36, 40, 53 S. Ct. 431, 77 L. Ed. 1015, the latter court held: "A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." This court said in *State ex rel. Bulkeley* v. *Williams,* 68 Conn. 131,

---

for the payment of benefits under the provisions of chapter 568 and the contributory or noncontributory retirement systems of any municipality or the state, any condition or impairment of health occurring on duty or off duty, caused by hypertension or heart disease resulting in death or temporary or permanent, total or partial disability to a uniformed member of a paid fire department or a regular member of a paid police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of such condition, shall be conclusively presumed to be a personal injury which arose out of and in the course of his employment, and which was suffered in the line of duty and within the scope of his employment, and if passage of such an examination was, at the time of his employment, required for such employment, no record of such examination shall be required as evidence in the maintenance of a claim under this section, or under such contributory or noncontributory retirement systems and under chapter 568. As used in this section, 'municipality' means any town, city, borough, fire district or other municipal corporation or taxing district which provides police or fire protection to its inhabitants."

149, 35 A. 24: "Towns have no inherent rights. They have always been the mere creatures of the Colony or the State, with such functions and such only as were conceded or recognized by law." See also *Sanger* v. *Bridgeport,* 124 Conn. 183, 190, 198 A. 746. These decisions, however, have not been followed with fidelity. Despite recognition of the impediment, in the *Sanger* case the court, nevertheless, discussed the merits of the constitutional argument advanced by the municipality as had earlier cases. See *Baker* v. *West Hartford,* 89 Conn. 394, 94 A. 283; *Norwalk* v. *New Canaan,* 85 Conn. 119, 81 A. 1027; *Goshen* v. *Stonington,* 4 Conn. 209.

The United States Supreme Court has in recent years greatly expanded the concept of standing since the *Williams* case, which was decided in the era of *Frothingham* v. *Mellon,* 262 U.S. 447, 43 S. Ct. 597, 67 L. Ed. 1078, holding that taxpayers ordinarily do not have standing to attack the constitutionality of laws, and *Alabama Power Co.* v. *Ickes,* 302 U.S. 464, 58 S. Ct. 300, 82 L. Ed. 374, holding that a competitor did not have standing to contest the grant of a license to another company. The continuing validity of these earlier decisions has been largely eroded by such decisions as *Flast* v. *Cohen,* 392 U.S. 83, 88 S. Ct. 1942, 20 L. Ed. 2d 947, which held that an individual taxpayer can sue so long as he can show how he, as distinguished from taxpayers in general, is constitutionally affected by the particular provision attacked, and *Hardin* v. *Kentucky Utilities Co.,* 390 U.S. 1, 88 S. Ct. 651, 19 L. Ed. 2d 787, which gave standing to a competitor in a license contest. In *United States* v. *I.C.C.,* 337 U.S. 426, 431, 69 S. Ct. 1410, 93 L. Ed. 1451, the court, in effect, permitted the federal government to sue itself, concluding that "the established principle

that a person cannot create a justiciable controversy against himself has no application here." Finally, in *Data Processing Service Organizations* v. *Camp,* 397 U.S. 150, 153, 90 S. Ct. 827, 25 L. Ed. 2d 184, the Supreme Court last year in a unanimous decision distinguished the concepts of "standing" and "legal interest," noting that "[t]he 'legal interest' test goes to the merits. The question of standing is different. It concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." See also *Investment Co. Institute* v. *Camp,* 401 U.S. 617, 91 S. Ct. 1091, 28 L. Ed. 2d 367. Here, the municipality, although a creation of the state government, is in disagreement with the state legislature about the interpretation of the constitution. It is a party which is adversely affected by the contested legislation and is properly in court on non-constitutional questions. In the absence of some overriding reason which we do not find, such as the existence of a more appropriate party to raise the question, or a statute prohibiting municipalities from litigating constitutional issues, it would be an abdication of judicial responsibility for this court, having before it a controversy between a municipality and another party and having been apprised of the asserted constitutional infirmity in a legislative act, adversely affecting the interests of the municipality and its inhabitants, to adjudicate only the non-constitutional questions when the latter may not be dispositive of the basic dispute. We hold, therefore, that the defendant municipality has sufficient legal interest and standing to raise constitutional issues in the present proceeding.

We turn now to the statute in question. As we have noted, § 7-433a provides that in the adjudication of claims for the payment of statutory workmen's compensation benefits, in the case of a uniformed member of a paid fire department or a regular member of a paid police department who successfully passed a physical examination on entry into the service, and the examination failed to reveal any evidence of hypertension or heart disease, any subsequent condition or impairment of health caused by such a condition and occurring whether the employee was either on duty or off duty shall be conclusively presumed to be a personal injury which arose out of and in the course of his employment and suffered in the line of duty and within the scope of his employment.

As the defendant municipality has properly argued, the presumption created by the statute being a conclusive one, and hence not rebuttable by proof of the actual facts, it would require an adjudication that a perfectly healthy off-duty Putnam policeman who brought on a heart attack by overexertion on the last day of a lengthy out-of-state vacation suffered the attack "in the course of his employment," "in the line of duty" and "within the scope of his employment" by the city—despite the circumstance that that situation was entirely without foundation in fact. Constitutionally, the legislature can no more bind the courts to such a factually unsupportable conclusive adjudication than it can require their adjudication that a camel is a horse by the enactment of a statutory conclusive presumption that all four-footed animals are horses.

"A presumption of law must be based upon facts of universal experience and be controlled by inexorable logic. 'It is asserted as a self-evident result

of human reason and experience.'" *Valentine* v. *Pollak*, 95 Conn. 556, 561, 111 A. 869. Even in the case of a rebuttable presumption, "the fact which is specified to be prima facie evidence of the fact to be inferred or presumed must be a fact which in common experience leads naturally and logically to the fact inferred or presumed. In the mind of the trier, the proof of one must produce the belief that it is more probable than not that the other, the ultimate fact, is thereby established." *Mott's Super Markets, Inc.* v. *Frassinelli*, 148 Conn. 481, 490, 172 A.2d 381. In *Tot* v. *United States*, 319 U.S. 463, 467, 468, 63 S. Ct. 1241, 87 L. Ed. 1519, the United States Supreme Court laid down the rule that for a presumption to be constitutionally valid there must be a "rational connection between the fact proved and the ultimate fact presumed . . . . But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts." The *Tot* case specifically states that a presumption cannot be prescribed solely because it is very difficult for the opposing side to prove his case. A fortiori this is true with respect to statutory conclusive presumptions.

Furthermore, as the United States Supreme Court said in *Heiner* v. *Donnan*, 285 U.S. 312, 328–29, 52 S. Ct. 358, 76 L. Ed. 772: "The government makes the point that the conclusive presumption created by the statute is a rule of substantive law, and, regarded as such, should be upheld; and decisions tending to support that view are cited. The earlier revenue acts created a *prima facie* presumption, which was made irrebuttable by the later act of 1926. A rebuttable presumption clearly is a rule of

evidence which has the effect of shifting the burden of proof, *Mobile, J. & K. C. R. Co.* v. *Turnipseed,* 219 U.S. 35, 43 [31 S. Ct. 136, 55 L. Ed. 78]; and it is hard to see how a statutory rebuttable presumption is turned from a rule of evidence into a rule of substantive law as the result of a later statute making it conclusive. In both cases it is a substitute for proof; in the one open to challenge and disproof, and in the other conclusive. However, whether the latter presumption be treated as a rule of evidence or of substantive law, it constitutes an attempt, by legislative fiat, to enact into existence a fact which here does not, and cannot be made to, exist in actuality, and the result is the same, unless we are ready to overrule the *Schlesinger* case [*Schlesinger* v. *Wisconsin,* 270 U.S. 230, 46 S. Ct. 260, 70 L. Ed. 557], as we are not; for that case dealt with a conclusive presumption and the court held it invalid without regard to the question of its technical characterization. This court has held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment. . . . 'The power to create presumptions is not a means of escape from constitutional restrictions.' If a legislative body is without power to enact as a rule of evidence a statute denying a litigant the right to prove the facts of his case, certainly the power cannot be made to emerge by putting the enactment in the guise of a rule of substantive law."

It is not without significance that although many states have recognized the special situation of firemen and policemen, and the problems of proving a causal relationship between their employment and heart ailments and have provided special treatment for them in the nature of rebuttable presumptions,

as to causation, no other state appears to have successfully attempted by legislative fiat and conclusive presumption to bar the employer from attempting to prove the negative fact that in a contested case the heart ailment was not causally connected with the employment. We are constrained to hold that the conclusive presumption prescribed by § 7-433a in the adjudication of workmen's compensation cases is in contravention of the due process clauses of both the Connecticut and United States constitutions.

The plaintiff argues that it was the unmistakable intent of the legislature to recognize the peculiar problems of policemen and firemen and the unusual risks attendant upon these occupations and that the contested provision of the statute would act as an inducement in securing their employment. He points to the number of states which have enacted statutes providing special treatment in the case of such employees in the proving of a causal relationship between employment and heart ailments. It is to be noted, however, that these statutes have sought their objective by altering the burden of proof or legislating rebuttable presumptions rather than by statutory conclusive presumptions. See Fla. Stat. §§ 112.18, 185.34 (1967), as to firemen and policemen; La. Rev. Stat. § 33:2581 (1968), Neb. Rev. Stat. § 35-203 (1968), S. C. Code Ann. § 72-251.1 (1970 Cum. Sup.), Wis. Stat. § 891.45 (1967), as to firemen only.

The plaintiff further argues that "there is no question" that the legislature could properly make an outright gift to members of a particular class if (1) the expenditure of public funds will promote the public interest and welfare, and (2) there is some natural and substantial difference germane to the

subject and purposes of the legislation between those in the class and those out of the class, properly citing *Lyman* v. *Adorno,* 133 Conn. 511, 52 A.2d 702, and *Higgins* v. *Civil Service Commission,* 139 Conn. 102, 90 A.2d 862. Thus, it is claimed that the objective of the legislation could be constitutionally attained by an exercise of the power of the state to control its own governmental agencies in their governmental capacities and the intended benefits of the contested statutory provision could be attained by legislation requiring municipalities to provide special compensation or a bonus for policemen and firemen or supplemental or special risk insurance in the case of such occupations.

While these arguments are persuasive they are not controlling in the present litigation since it is not legislation of that sort which we have for consideration. To argue that the legislature could have paid or required from the municipality a bonus or special compensation or insurance of some sort and thus reach the same result is no indication that the legislature would have done so. In fact, it has not done so. As the United States Supreme Court recently said in a civil case: "It must be remembered that '[a]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute . . .' or judicially rewriting it. *Scales* v. *United States,* . . . [367 U.S. 203, 211, 81 S. Ct. 1469, 6 L. Ed. 2d 782]. To put the matter another way, this Court will not consider the abstract question of whether Congress might have enacted a valid statute but instead ask whether the statute that Congress did enact will permissibly bear a construction rendering it free from constitutional

defects." *Aptheker* v. *Secretary of State,* 378 U.S. 500, 515, 84 S. Ct. 1659, 12 L. Ed. 2d 992.

We conclude that regardless of what it might have constitutionally done to attain the same objective the constitutionality of § 7-433a cannot be sustained and, accordingly, the commissioner should not have refused the offer of the defendants to produce evidence which would tend to show that the plaintiff's occlusion and infarction did not arise out of the employment but were unrelated thereto and due to systemic health conditions.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to remand the case to the workmen's compensation commissioner for the second district for a new hearing.

In this opinion the other judges concurred.